SUPERIOR COURT 
 
 PAULA S. WILBERT AND LUIS A. ESPINOZA vs. VERIZON NEW ENGLAND, INC., AND NSTAR ELECTRIC COMPANY, D/B/A EVERSOURCE ENERGY

 
 Docket:
 17 03691
 
 
 Dates:
 December 17, 2018
 
 
 Present:
 
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS 
 
 

 Plaintiffs Paula S. Wilbert and
Luis A. Espinoza bring this action against defendants Verizon New England, Inc.
("Verizon") and NStar Electric Company, d/b/a Eversource Energy
("Eversource"), alleging against each claims for negligence, public
nuisance and loss of consortium. This matter arises from a bicycling accident
which Ms. Wilbert alleges occurred along a bicycle path in Dennis,
Massachusetts. She claims she was injured as the result of the placement of a
"guy wire," a wire stabilizing a utility pole, which encroached upon
the bicycle path. Her husband, Mr. Espinoza, alleges damages for loss of
consortium. Plaintiffs contend that the defendants are responsible for the guy
wire.[1] Presently before this Court are
motions for judgment on the pleadings filed by both Verizon and Eversource. Even though the Defendants' motions
are styled as Rule 12(c) motions, all three parties offer materials outside the
pleadings in their filings. Under the rule, the Court may elect to consider
these materials and treat the motions as motions for summary judgment, or
exclude them and decide the motions under Rule 12(c). See Rule 12(c) ("If,
on a motion for judgment on   ---------------------------   [1]Plaintiffs had earlier brought
claims against the Town of Dennis, which were dismissed by this Court by order
dated September 27, 2018.   -1-   the pleadings, matters outside the pleadings are presented
to and not excluded by the court, the motion shall be treated as one for
summary judgment and disposed of as provided in Rule 56, and all parties shall
be given reasonable opportunity to present all material made pertinent to such
a motion by Rule 56"). In this case, Verizon claims that it "does not
waive, and expressly reserves, the right to file a Motion for Summary Judgment
upon the completion of discovery in the litigation," Memorandum of Law, at
1 n. 1, which suggests the Court should exclude the additional materials and
resolve the present motions in strict accordance with Rule 12(c). However, all
three parties have had a reasonable opportunity to present all material
relevant to a summary judgment motion, and as discussed below, the record shows
a lack of dispute on the material facts such that judgment is appropriate as a
matter of law. The Court thus elects to consider the additional materials and
decide the motions for judgment on the pleadings as motions as motions for
summary judgment. In consideration of the parties'
memoranda of law and oral arguments, and for the reasons that follow, the
Defendants' motions for summary judgment are ALLOWED. BACKGROUND Summary judgment is appropriate
when the record shows that "there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a matter of
law." Mass. R. Civ. P. 56(c); see DuPont v. Commissioner of Corr., 448
Mass. 389, 397 (2007). The moving party bears the initial burden of
demonstrating that there is no triable issue and that he or she is entitled to
judgment. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing
Pederson v. Time. Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors
Corp., 410 Mass. 706, 716 (1991). In reviewing a motion for summary judgment,
the Court views the evidence in the light most favorable to the non‑moving
party and draws all reasonable inferences in his or her   -2-   favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing
Coveney v. President & Trs. of the Coll. 
of the Holy Cross, 388 Mass. 16 (1983); see also Simplex Techs., Inc. v.
Liberty Mut. Ins. Co., 429 Mass. 196, 197 (1999). Beginning in the early 1960's,
utility poles were installed in the Town of Dennis ("Town"). The
poles were initially authorized by a Town ordinance, an "Order for Joint
Pole Relocation" dated January 30, 1962, which granted the New England
Telephone and Telegraph Company, Verizon's predecessor, and Cape & Vineyard
Electric Company, evidently Eversource's predecessor,2 "a joint relocation
for and permission to erect and maintain poles and their respective wires and
cables, together with such sustaining and protecting fixtures as said Companies
may deem necessary" ("1962 Ordinance"). Pursuant to the 1962 Ordinance,
utility pole number 37C I 95 or 37C 195 (the "Utility Pole") was
installed in 2004. It is jointly owned by the Defendants. When it was
installed, both Defendants, themselves or through their predecessors, installed
their own "guy wires" to stabilize it, which were connected to the
Utility Pole and anchored to the ground. One of the guy wires spanned
diagonally from the ground to the Utility Pole ("the Guy Wire").
Verizon owned that Guy Wire. In connection with the utility poles
in Dennis and elsewhere, Verizon and Eversource, through their predecessors,
entered into a long‑standing agreement, called the Joint Ownership Agreement
("JOA), governing their use and maintenance of the Utility Poles and the
property associated with them. In 1993, and pursuant to the JOA, Eversource
assumed custodianship for the utility poles in the Town. Eversource also served
as the Town's point of contract for both companies regarding all of the utility
poles in the Town.   ---------------------------   [2] Eversource contended, but
provided no evidence to show, that Cape & Vineyard Electric Company is its
predecessor, but Plaintiffs concede the point.   -3-   In or about 2012, the Town sought
to construct, pave, and grade a bicycle path ("Bicycle Path").
Because the guy wires for the Utility Pole encroached into the area for the
proposed Bicycle Path, Joseph Rodricks, then the Town's Engineer, sent an email
in January of 2012 to Eversource requesting that the Eversource and/or Verizon
guy wires connected to the Utility Pole be repositioned "12 ft (minimum)
... to clear the bikepath we are constructing," and requested that
Eversource send him a work request form to complete this work. On January 31,
2012, Rodricks prepared and emailed to Eversource a Work Order Application,
which sought "[r]eplacement of existing guy wire on [the Utility Pole]
with sidewalk guy." On February 8, 2012, Eversource emailed Rodricks
advising him that Eversource had assigned a work order for the work Rodricks
requested ("Work Order"). In or about June 2012, the Town
paved the Bicycle Path. The Bicycle Path is a public way. On July 6, 2012, Rodricks sent
another email to Eversource, asking about the status of the work contemplated
under the Work Order. Eversource moved its guy wire, but the Guy Wire, which
was owned by Verizon, was not moved following this email. As of July 21, 2017, the Utility
Pole was located in a grassy area between the road and Bicycle Path. Plaintiff
Wilbert alleges that on that date, she was injured while riding a bicycle along
the Bicycle Path when she struck the Guy Wire, owned by Verizon, which crossed
the Bicycle Path at an allegedly inadequate height. Plaintiff served Verizon or
Eversource with notice of the alleged accident in October, 2017, which was more
than thirty days after Wilbert's alleged accident. In the Second Amended Complaint,
Plaintiffs contend that Verizon was negligent in, among other things, failing
to heed the Town's request that it replace the Guy Wire. They also   -4-   claimed that Eversource was liable because it jointly owned
the Utility Pole with Verizon and, among other things, was responsible for
taking corrective action regarding Verizon's Guy Wire itself or for notifying
Verizon of the need to do so or otherwise causing Verizon to remove or remedy
the alleged danger posed by the Guy Wire. DISCUSSION A. Overview The exclusive remedy for a claim of
personal injury against a "person obliged by law" to repair a defect
in or on a public way is G.L. c. 84, '15.
Wolf v. Boston Water & Sewer Commission, 408 Mass. 490,492 (1990). G .L. c.
84, '15
provides in pertinent part If a person sustains bodily injury
or damage in his property by reason of a defect or a want of repair or a want
of a sufficient railing in or upon a way, and such injury or damage might have
been prevented, or such defect or want of repair or want of railing might have
been remedied by reasonable care and diligence on the part of the county, city,
town or person[3] by law obliged to repair the same, he may, if such county,
city, town or person had or, by the exercise of proper care and diligence,
might have had reasonable notice of the defect or want of repair or want of a
sufficient railing, recover damages therefor from such county, city, town or
person... G. L. c. 84, '
15 (emphasis added). Under G. L. c. 84, ''18‑19,
a plaintiff bringing a claim under '15
must give written notice of the claim on the responsible entity within 30 days
of the alleged accident. Doing so is a necessary precondition to filing suit,
whether the plaintiff seeks to sue a governmental entity or private party under
the statute. See Paddock v. Brookline, 347 Mass. 230, 231‑232 (1964); Ram v.
Charlton, 409 Mass. 481, 490 (1991) ("Both private parties and
governmental entities are entitled to notice within thirty days when a defect
in a way under their control is alleged under G. L. c. 84, '15").   ---------------------------   [3] The parties do not dispute that
the Defendants are "persons" within the scope of the statute. See
Bartholomew v. Charter Commc'ns, Inc., 84 Mass. App. Ct. 110 at *2 (2013)
(unpublished opinion) ("The word 'person' in the phrase of the statute,
'or person by law obliged to repair the same,' includes a corporation,"
quoting Hurlbut v. Great Barrington, 300 Mass. 524, 526 (1938)).   -5-   The parties do not dispute that the
Bicycle Path constitutes a way within the meaning of G. L. c. 84, ' 15. Nor do they dispute, for purposes
of these motions, that the positioning of the Guy Wire was a defect, understood
as "anything in the condition or state of the roadway which renders it
unsafe or inconvenient for ordinary travel." Huffy. Holyoke, 386 Mass.
582, 584 (1982) (citations omitted). A defect includes obstructions across a
way, such as a chain across a road (Huff, 386 Mass. at 584) or tree branches
over it (Miles v.  Commonwealth, 288 Mass.
243 (1934)). The Guy Wire crossed the Bicycle Path in a manner that encroached
upon it, and was thus a defect under G. L. c. 84, '
15. As this Court concluded at an
earlier stage in this litigation, it is undisputed that Plaintiffs failed to
give Verizon written notice of Wilbert's alleged July 21, 2017 accident until
October 5, 2017, more than a month after the 30‑day notice requirement set
forth in G.L. c. 84, '18
had expired. Eversource did not receive notice until five days after Verizon's
notice. The question then is whether Verizon or Eversource are proper
defendants within the scope of G.L. c. 84, '15.
If they are, Plaintiff's claims are barred for failure to have provide timely
notice. B. Verizon Leaving Eversource aside for the
moment, the Court expressed its concern earlier during this litigation that it
was unclear whether the statutes and ordinances then‑relied upon by Verizon C the National Electric Safety Code, a
Town ordinance granting easements to utilities, G.L. c. 84, '15, and G.L. c. 166, ''21, 22 and 32 C collectively established that Verizon
was required by law to maintain the guy wire because "the statutes and
Dennis town ordinance relied on by Verizon do not expressly impose any duty of
repair." The Court contrasted this case with two cases where the
defendant's obligation to repair defects in a way was expressly laid out in a
statute or city ordinance. See, u., Filepp v. Boston Gas Company.   -6-   85 Mass. App. Ct. 901 (2014) (rescript opinion) (statute
obligated Boston Gas, after excavation, to "put all such streets, lanes and
highways in as good repair as they were in when opened"); Bartholomew, 84
Mass. App. Ct. 1104 at *1 & n. 2 (Worcester city ordinance expressly
provided that "[o]ne who owns, possesses or controls any structure,
excavation or conduit in, under, over, or upon a public way... shall be deemed
to have entered into the following agreements with the City [of Worcester]...
to maintain the public way directly above or adjacent to said structure, excavation
or conduit, as the case may be, in good repair and condition"). The Court
provided a window of discovery to determine whether Verizon owned the Guy Wire
and, if it did, "whether Verizon had a legal duty to repair defects on the
public way in Dennis." The Court did not reach Verizon's argument that the
common law imposed such a duty. Ownership of the Guy Wire is no
longer in dispute. Verizon, to its credit, promptly admitted that it owns the
Guy Wire. Further, the discovery conducted by the parties established that
Verizon was obligated by law to maintain it. That discovery revealed the 1962
Ordinance, which authorized Verizon and its predecessor to install "and
maintain poles and their respective wires and cables, together with such
sustaining and protecting fixtures as said Companies may deem necessary"
(emphasis added). This language, which was not before the Court previously, is
similar to that reflected in the statute in Filepp and the ordinance in
Bartholomew in that it expressly imposed a duty on Verizon to maintain the Guy
Wire it owned. In addition, to the extent the Plaintiff alleges that the common
law also imposed this duty on Verizon, that alleged common law duty would also
establish a legal obligation on Verizon to maintain the Guy Wire. See Baird v.
Massachusetts Bay Transportation Authority, 32 Mass. App. Ct. 495, 487‑98
(1992) (a common law duty satisfied the requirements of G.L. c. 84, '15 that a duty be based in law).   -7-   Verizon is thus within the scope of
'15. Plaintiff Wilbert's failure to
provide timely notice on Verizon is fatal to her claim against Verizon.
Plaintiff Espinosa's claim against Verizon is meritless as a matter of law, as
loss of consortium claims are outside the sweep of G.L. c. 84, '15. See Baird, 32 Mass. App. Ct. at 499‑500.
Plaintiff's Second Amended Complaint against Verizon is therefore dismissed. C.        Eversource Plaintiffs' theory regarding
Eversource has narrowed since it filed the Second Amended Complaint. In it,
Plaintiffs alleged that Eversource was directly liable to them on the same
basis as Verizon or, alternatively, on the grounds that Eversource failed to
alert Verizon to the Town's concerns about the Guy Wire and/or failed to cause
Verizon to remedy the alleged hazard posed by the Guy Wire. In its Opposition
to Eversource's motion, Plaintiffs abandoned the first claim, alleging that
"Eversource had no obligation (whether common law or statutory) to repair
the Guy Wire."[4] Because Plaintiffs have abandoned their direct claim
against Eversource, Eversource's motion for summary judgment on this theory is
allowed and the claims of both Plaintiffs on this theory are dismissed. Plaintiffs ground their second
theory against Eversource C
that Eversource failed to fulfill its duty to notify or cause Verizon to repair
its Guy Wire C not on
law but on Eversource's duty under its contract with Verizon to spur Verizon to
address the Town's complaint regarding the Guy Wire. Because this claim is not
based on any legal obligation imposed on Eversource to maintain the Guy Wire,
it would fall outside of the scope of '15.
See Bartholomew, 84 Mass.   ---------------------------   [4]Because the parties agree that
the Guy Wire was Verizon's, any claim that Eversource is within the scope of '15 because it is the successor to Cape
& Islands Electric Company is irrelevant. Even accepting the Plaintiffs'
concession that Eversource is Cape & Islands' successor, the undisputed
facts show that Verizon, and not Eversource, owned the Guy Wire and thus had
the legal obligation to maintain it.   -8-   App. Ct. 1104 at *2 n. 5, citing Ram, 409 Mass. at 489 ('15 is the exclusive remedy only where
the defendant falls within its scope as "by law obliged to repair"
the way). As a legal matter, a plaintiff may
ground a duty of care on a party's obligations as framed in a contract with a
third party. As the Supreme Judicial Court has noted: "It is settled that a claim in
tort may arise from a contractual relationship, ... and may be available to
persons who are not parties to the contract....[A] defendant under a
contractual obligation 'is liable to third persons not parties to the contract
who are foreseeably exposed to danger and injured as a result of its negligent
failure to carry out that obligation." Parent v. Stone & Webster Eng'g
Corp., 408 Mass. 108, 113‑114 (1990) (Parent), quoting Banaghan v. Dewey, 340
Mass. 73, 80 (1959). Where a contractual relationship creates a duty of care to
third parties, the duty rests in tort, not contract, and therefore a breach is
committed only by the negligent performance of that duty, not by a mere
contractual breach. See Anderson v. Fox Hill Village Homeowners Corp., 424
Mass. 365, 368 (1997), quoting Abrams v. Factory Mut. Liab.  Ins. Co., 298 Mass. 141, 144 (1937) (
"Although the duty arises out of the contract and is measured by its
terms, negligence in the manner of performing that duty as distinguished from
mere failure to perform it, causing damage, is a tort"). LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 328
(2012) (citations omitted, emphasis added).[5] Under this theory, Plaintiff
Wilbert's claim is that Verizon had a statutory duty to maintain the Guy Wire,
a claim which falls within the scope of '15,
but that Eversource's duty under the JOA was to Verizon fulfilled that duty, a
claim that would fall outside of '15. While legally viable, Plaintiffs
point to no provision in the JOA which establishes such a duty of care on
Eversource such as to advise Verizon of the Town's concerns with the Guy Wire
or to ensure Verizon took any action to address it. On the contrary, as
Plaintiffs argue in their opposition to Verizon's motion for judgment on the
pleadings, the JOA places responsibility on   ---------------------------   [5] This claim is different than a
claim where the plaintiff contends that he or she is a third party beneficiary
of a contract, which is not alleged by Plaintiffs here. See Shamsi v. Ducharme,
91 Mass. App. Ct. 1122, as clarified on denial of reh'g (June 14, 2017), review
denied, 477 Mass. 1108 (2017), and review denied sub nom. Carlson v.  Ducharme, 477 Mass. 1109 (2017) (citations
omitted) (plaintiffs alleging to be a third party beneficiary of a contract
"must prove that they are intended, as opposed to merely incidental,
beneficiaries of the agreement.... To determine whether a third party is an
intended beneficiary, we look to 'the language and circumstances of the contract'
for evidence of the contracting parties' intent to confer a right of
enforcement on the third party. In applying this test, we keep in mind that
'contracting parties may well intend that a third party receive a benefit as a
result of their contract but not intend to confer on the third party a right to
enforce the contract").   -9-   each company to place and maintain its own guy wires. See
JOA, Tab 7, "Policy for Guying J.O. Poles," ''3,
6; Agreement, September 1, 1975, Article 7. Nothing suggests that Eversource is
required to monitor Verizon's compliance with its statutory responsibilities. Plaintiffs have thus failed to show
that the JOA established a duty of care owned by Eversource to them. Eversource
is not liable to them as a matter of law. Summary judgment is thus granted to
Eversource on Plaintiff Wilbert's secondary theory of liability. ORDER Treating Defendants' motions for
judgment on the pleadings as motions for summary judgment, the Defendants'
motions for summary judgment are ALLOWED. SO ORDERED.   /s/MICHAEL D. RICCIUTI Justice of the Superior Court December 17, 2018   -10-